### C. CROOKS & CO., ET AL., *v.* WILLIAM R. DILLION.

[Abstract Kentucky Law Reporter, Vol. 1—62.]

**Instructions.**

There must be both an objection and an exception to an instruction given by the trial court before the Court of Appeals can consider it to determine whether it is erroneous.

**Incompetent Witnesses.**

Where at a trial under the provisions of the statute the witnesses were excluded from the courtroom, each party giving a list of his witnesses, a witness not excluded from the courtroom is not competent to testify.

APPEAL FROM ROCKCASTLE CIRCUIT COURT.

June 3, 1880.

OPINION BY JUDGE PRYOR:

While doubts may well be entertained as to the identity of the bill of exceptions filed in the court below, we are not inclined to the conclusion that the legislation with reference to the filing or preparation of a bill of exceptions can apply only to cases tried and determined after the passage of the act.

It was designed as a curative statute, and to remedy a defect in the law calculated to deprive litigants of valuable rights upon a mere technicality.  We shall proceed, therefore, to consider the case upon its merits.  The instructions given for the plaintiff (appellee) are somewhat confused, and, in a case where injustice has been done the defendants (appellants) by the verdict, the court would reverse for the reasons that such instructions are calculated to mislead a jury, but in this case there was no objection to any instruction asked for by the appellee, and an exception reserved only as to the error complained of.  There must be both an objection and an exception, and, the appellants having failed to make an objection, the instructions given for the appellee cannot be considered.

We perceive no objections to the instructions given by the court

for the defendant, or to the addition made.to them by the court when offered by the appellants. As to instruction No. 8, even if it should have been given to the jury, there is no evidence conducing to show that any improvements were made after the notice given by the appellants to the appellee that the latter could no longer use the switch. The amount of damages sustained by the appellee is not questioned by the appellants, except in their answer denying the existence of any contract between the parties. The improvements or labor of the appellee on the mines or leased property were certainly of great value, and when deprived of the use of the switch rendered them valueless to the appellee. The appellee swears that after the contract he expended near $1,000 in repairing the tramway, erected buildings of value, made excavations, and other improvements causing a large expenditure of money. The fact of the expenditures incurred and improvements made is not attempted to be controverted by any proof on the part of the appellants, the latter relying almost entirely upon that part of the  defense in which it is alleged that no contract was ever made between the parties; and certainly if a contract was made its violation has resulted in pecuniary ruin to the appellee.

The switch constructed by the appellants, as they prove, was at a heavy expenditure, and the fact that the appellee was in no pecuniary condition to construct one himself is persuasive of the fact that he would not have invested his all in improving the mines or the leased estate, without making some contracts with the appellant by which he could get his coal to market. The appellee swears that a contract was made between himself and the appellants, and he gives the terms of the contract and the consideration he was to pay. The entries on the books of the appellants corroborate the statement made by the appellee, in showing that he had made the payments as the contract required.

He is also sustained by the testimony of Luke Jones, who testifies, as a fair, disinterested and intelligent witness, to the effect that the contract was as the appellee states it to have been; that he never heard the right of Dillion questioned until he refused to join the coal ring; that one of the defendants said to this witness that the others wanted him to sign a notice to Dillion that he could ship no longer on the road, and he declined to sign it because he did not want to injure Dillion, and the latter had the right to ship coal over the switch. Crook expressed the opinion that if Dillion was stopped

it would break him up. Crook denies such a conversation, but Jones was at the time acting as agent for the company and was requested to give the notice, and we see no reason for discrediting his statement. These witnesses were all before the jury, Many of them testified in person, and while the plaintiff and his witnesess, or rather their statements, have been flatly contradicted by the appellants and their witnesses, it was the province of the jury to determine the credibility of the witnesses and to pass upon the questions of fact about which there was such a contrariety of testimony. If the contract was made as is alleged by the appellee the injury resulting by depriving him of the use of the switch has not been exaggerated in its effects by the verdict of the jury. It made his possession valueless except the land itself, and wrecked an enterprise that might have contributed to increase largely the value of the small estate owned by the appellee.

While such a speculative inquiry could not have been indulged in by the jury, and should not have entered into the consideration of the question as to the damages sustained, the plaintiff, appellee, was certainly entitled to recover the value of his expenditures and improvements that would not have been made on the property but for the contract, and the value of which has been lost to the appellee by reason of its breach by the appellants. We think the proof develops the fact that this breach of the contract was caused by the refusal of the appellee to enter into an arrangement with the appellants by which they were to mutually agree as to the price of coal and act in harmony, the one with the other. Such a contract, in our opinion, was made as is alleged, and we are not disposed to adjudge that the damages awarded are excessive.

It is also assigned for error that the court erred in excluding the testimony of Mrs. Mullins, or rather in refusing to permit her to be examined as a witness. When the case was called the witness, under the provisions of the code, was excluded from the courtroom, each party giving a list of his witnesses. The husband of the witness had been examined by the defendants, and both the husband and wife, or the wife, lived at the house of one of the defendants. She was called to make a statement contradicting the appellee when no foundation was laid for it, and also to be examined in chief when appellants must have known, or could easily have discovered, what she would prove before the trial began.

Her testimony was incompetent, however, for the reason that no

foundation had been laid for attacking the appellee by the witness. Nor was the exclusion of the testimony of the defendant, Davis, erroneous. He should have been first examined as required by the code, and, besides, a part of his deposition was read, and in our opinion the exclusion of his testimony could not have changed the result. As to the exceptions to the testimony, showing the improvements and their value made before the contract was entered into, they were properly disregarded. It was necessary to have this proof in order to show what improvements had been made subsequent to that time, and, besides, the court expressly told the jury that the appellee was not entitled to recover by reason of any improvement made before the contract was entered into. Other exceptions were taken not necessary to notice, as in our opinion they did not, if the error complained of existed, affect the substantial rights of the appellants.

The judgment below is therefore *affirmed*.

*Smith & Little, for appellants.*

*R. M. & W. O. Bradley, W. P. D. Bush, W. G. West, for appellee.*